IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01559-PAB

FELIX J. VILLANUEVA CABRERA,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

## ORDER
_____

      This matter is before the Court on plaintiff Felix J. Villanueva Cabrera's complaint
[Docket No. 1], filed on June 15, 2012.  Plaintiff seeks review of the final decision of
defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for
supplemental security income under Title II of the Social Security Act (the "Act"), 42
U.S.C. §§ 401-33.[1]  The Court has jurisdiction to review the Commissioner's final
decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

      On May 18, 2010, plaintiff applied for disability and disability insurance benefits
under Title II of the Act.  R. at 17.  Plaintiff alleged that he had been disabled since
August 1, 2008.  *Id*.  After an initial administrative denial of his claim, plaintiff received a
hearing before an Administrative Law Judge ("ALJ") on October 27, 2011.  *Id*.  On

_____

      [1] The Court has determined that it can resolve the issues presented in this
matter without the need for oral argument.

November 7, 2011, the ALJ issued a decision denying plaintiff's claim.  R. at 30.

The ALJ found that plaintiff had the following severe impairments: "(1) Degenerative disc disease of the lumbar spine, status post L5-SI laminectomy and diskectomy; (2) Radiculopathy of the right lower extremity; (3) Right elbow olecranon chip fracture; (4) Major depressive disorder; (5) Post-traumatic stress disorder (PTSD); and (6) Obesity."  R. at 19-20 (citation omitted).  The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 21, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant must have a sit/stand option; cannot work at unprotected heights; cannot deal with the general public; and cannot perform complex tasks, such that he is limited to work with an svp ["Specific Vocational Preparation"] of 2 or less.

R. at 22.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was unable to perform any past relevant work, R. at 28, and that plaintiff was not disabled as "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. at 29.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

3

> [a]n individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and (5)
> whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

4

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

#### 1.  Medical Opinions

Plaintiff argues that the ALJ failed to apply the correct legal standard in assigning weight to the opinions of Dr. James Martin and Dr. Sara Sexton and that the weight assigned to each opinion was not based on substantial evidence.  Docket No. 17 at 16.

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  The Tenth Circuit has articulated a two-step test for determining whether the opinion of a treating source is entitled to controlling weight:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted).  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  *Id.*  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.  *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  The level of deference accorded a non-controlling opinion of a treating physician depends on a

number of factors, including the length of the treating relationship, the nature and extent

of the relationship, the supportability of the opinion and its consistency with the record

as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6).

An ALJ need not expressly discuss the application of each factor to each medical

opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007) (internal citations omitted).  "When a treating physician's opinion is

inconsistent with other medical evidence, the ALJ's task is to examine the other

physicians' reports to see if they outweigh the treating physician's report, not the other

way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal

citations omitted).

"Unless a treating source's opinion is given controlling weight, the administrative

law judge must explain in the decision the weight give to the opinions of a State agency

medical . . . consultant."  20 C.F.R. § 416.927(e)(2)(ii).  Given the weaker ties between

claimants and non-treating physicians, the opinions of such physicians "are weighed by

stricter standards, based to a greater degree on medical evidence, qualifications, and

explanations for the opinions, than are required of treating sources."  SSR 96-6p, 1996

WL 374180, at *2 (July 2, 1996).  "[B]ecause nonexamining sources have no examining

or treating relationship with [claimants], the weight [an ALJ] will give their opinions will

depend on the degree to which they provide supporting explanations for their opinions"

and "the degree to which these opinions consider all of the pertinent evidence in [a]

claim, including opinions of treating and other examining sources."  20 C.F.R.

6

§ 404.1527(c)(3).

Omitting a sufficiently thorough explanation for the weight given to the opinion of a treating physician (if given less than controlling weight) or for the weight given the opinion of a nonexamining physician is grounds for remand.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (remanding denial of benefits because ALJ improperly rejected the treating physician's opinion and relied instead on the findings of a non-treating physician, which the court found to be "of suspect reliability"); *Andersen v. Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (remanding denial of benefits where ALJ failed to indicate weight accorded to treating physicians' opinion and failed to supply "good reasons" for according them that weight).

### a.  Dr. Martin

Plaintiff argues that the ALJ failed to consider or discuss the 20 C.F.R. § 404.1527(c) factors.  Docket No. 17 at 16.[2]   The Court disagrees.  The ALJ acknowledged that Dr. Martin was a treating physician and noted the length of the treating relationship, which corresponds to the first factor.  R. at 27-28.  The ALJ found Dr. Martin's opinion to be inconsistent "with the claimant's treatment history or mental status exam findings, which, as noted above, suggest only moderate limitations," which corresponds to the fourth factor.  *Id.*  Although the ALJ does not re-weigh the evidence in the context of discussing Dr. Martin's opinion, the ALJ makes reference to his discussion of reports by other treating providers, which was extensive and thorough and

---

[2]Although plaintiff cites to the factors listed in SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), the regulation states the factors it lists are taken from 20 C.F.R. § 404.1527.  SSR 06-03p, 2006 WL 2329939, at *3.

which supports the ALJ's finding that plaintiff was not as limited as Dr. Martin indicated. R. at 25.  The ALJ also noted that the report contained an internal inconsistency, namely, that plaintiff's GAF score[3] in Dr. Martin's report indicated that plaintiff had only moderate symptoms, whereas Dr. Martin's recommended limitations suggested that plaintiff suffered severe symptoms.  R. at 27.  The ALJ also found that Dr. Martin's ultimate conclusions lacked support because, although Dr. Martin began treating plaintiff in 2010, Dr. Martin's recommended limitations cover a period from 2008 to present.  R. at 28.  The ALJ noted that Dr. Martin's failure to explain the evidence supporting his conclusions concerning plaintiff's limitations prior to their treating relationship "significantly detracts from the persuasiveness of the opinion."  *Id.*  The ALJ is not required to expressly apply all of the 20 C.F.R. § 404.1527 factors, but the ALJ in this case discussed issues related to three of the factors.  Moreover, in declining to give Dr. Martin's opinion controlling weight, the ALJ determined that Dr. Martin's opinion was not "consistent with other substantial evidence in the record."  *See Watkins*, 350 F.3d at 1300.  The Court finds that the ALJ applied the correct legal standard in declining to give Dr. Martin's opinion controlling weight and sufficiently stated the weight given to Dr. Martin's opinion and the reasons for it.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

The Court also finds that the weight given to Dr. Martin's opinion was supported by substantial evidence.  Plaintiff does not point to any specific evidence that would

---

[3]The GAF "is a subjective determination based on a scale of 1–100 of 'the clinician's judgment of the individual's overall level of functioning."  *Salazar v. Barnhart,* 468 F.3d 615, 624 n. 4 (10th Cir. 2006).

overwhelm the evidence relied on by the ALJ.  *See Musgrave*, 966 F.2d at 1374.  As

noted above, plaintiff consistently reported to his treating physicians that he was able to

do his own cooking and cleaning, manage medications and money, use public

transportation, and drive himself.  R. at 811, 853.  Plaintiff reported that he could follow

written and spoken instructions well and that he got along with authority figures.  R. at

223-24.  According to Dr. Brad Marten, who plaintiff visited for a consultative

psychological examination in June 2010, plaintiff's thought process appeared organized

and clear and he denied any history of interpersonal conflict or difficulty.  R. at 341-42.

The ALJ gave Dr. Marten's opinion great weight.  R. at 26.  This evidence supports the

ALJ's conclusion that the limitations proposed by Dr. Martin were too severe in light of

the evidence in the record and the inconsistencies in Dr. Martin's report.  Accordingly,

the Court finds that the ALJ's decision to afford Dr. Martin's opinion little weight is

supported by substantial evidence.

### b.  Dr. Sexton

Plaintiff argues that the ALJ improperly rejected portions of Dr. Sexton's opinion

which were consistent with other treating and examining sources.  Docket No. 17 at 16-

17.  Specifically, plaintiff argues that the ALJ improperly disregarded Dr. Sexton's

opinion that plaintiff's "symptoms of anxiety and depression may interfere w/ his

completion of a normal workday/workweek or cause inconsistent pace."  *Id.* (citing R. at

78).  Plaintiff, however, mischaracterizes Dr. Sexton's opinion.  Dr. Sexton's opinion

goes on to say that "when work does not require more than simple instructions, ordinary

routines, or simple work decision making, limitations of attendance and pace *will not*

prevent his completing a workday/workweek." R. at 78 (emphasis added). Dr. Sexton's opinion on absenteeism is not, as plaintiff argues, entirely supported by Dr. Martin's opinion, which concluded that plaintiff would miss four or more days of work a month. R. at 977. Thus, the Court rejects plaintiff's argument on this issue. The ALJ gave Dr. Sexton's opinion moderate weight, explaining that Dr. Sexton's opinion was not persuasively reasoned and, with respect to her opinion that plaintiff was unable to interact with co-workers, unsupported by the evidence. R. at 28. In the absence of a specific objection to the ALJ's reasoning or the evidentiary support for the ALJ's conclusion, the Court finds that the ALJ properly explained his decision to afford moderate weight to Dr. Sexton's opinion and that the ALJ's decision was supported by substantial evidence.

### 2. Credibility

Plaintiff argues that the ALJ erred in assessing plaintiff's subjective complaints of pain. Docket No. 17 at 18-19.[4] Specifically, plaintiff argues that the ALJ failed to apply the correct legal standard and that his credibility assessment was not based upon substantial evidence. *Id.* at 18-19.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*

---

[4]Plaintiff does not appear to challenge the ALJ's credibility findings concerning plaintiff's complaints concerning mental limitations. *See id.* at 20-21.

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Accordingly, the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo."  *Id*.

However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).  In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").  "One strong indication of the credibility of an individual's statements is their

consistency, both internally and with other information in the case record."  SSR 96-7p,

1996 WL 374186, at *5.

As a threshold matter, plaintiff argues that most of the reasons the ALJ gave for

rejecting plaintiff's testimony regarding pain related to the lack of objective evidence.

Docket No. 17 at 20.  Plaintiff claims that plaintiff was not required to produce objective

medical evidence of pain and, as such, that the ALJ erred in failing to consider plaintiff's

subjective complaints.  Docket No. 17 at 20.  Plaintiff quotes *Huston v. Bowen*, 838

F.2d 1125 (10th Cir. 1988), arguing that "'if an impairment is reasonably expected to

produce *some* pain, allegations of *disabling* pain emanating from that impairment are

sufficiently consistent to require consideration of all relevant evidence.'"  *Id.* at 1129

(quoting *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987)).

The Court disagrees with plaintiff's characterization of the ALJ's decision.  The

ALJ agreed with plaintiff that his medically determinable impairments could be expected

to cause the symptoms alleged, thus triggering the ALJ's duty to consider all relevant

evidence of pain. *See Huston*, 838 F.2d at 1129.  The ALJ extensively discussed and

considered the objective medical evidence, which he concluded "[did] not necessarily

correlate to the degree of the alleged severity of these symptoms."  R. at 24.  However,

to the extent plaintiff argues that the ALJ erred in entirely failing to consider subjective

evidence, the Court finds no support for such an argument in either the ALJ's decision

or the record.  The ALJ specifically noted plaintiff's subjective allegations of pain, R. at

23, and then compared those allegations to the objective medical evidence, plaintiff's

efforts to control his pain, treatment history, R. at 25, and plaintiff's daily activities, R. at

26.  The Court rejects plaintiff's argument that the ALJ's treatment of plaintiff's

testimony is reversible error.

To the contrary, the ALJ carefully set forth the reasons supporting his negative credibility assessment.  First, he referenced the objective medical evidence, including MRIs and other tests, that the ALJ concluded "demonstrate some abnormalities of the lumbar spine, most prominent at L4-5 and L5-S1."  R. at 24.  But the ALJ also noted that the evidence showed no recurrent herniations or frank impingement of the nerve roots and noted that there was little suggestion that nerve damage was ongoing.  *Id.* The ALJ discussed the observations reported by plaintiff's treating providers, which supported the existence of reasonable limitations, but also indicated that plaintiff retained significant strength in the lower extremities and that his leg pain was not as constant as alleged.  R. at 25.  The ALJ also noted plaintiff's treatment history and attempts to secure treatment, but found that such efforts did not overcome other inconsistencies.  *Id.*  With regard to medication side effects, the ALJ found that plaintiff's failure to complain of side effects to his treating physicians undermined the credibility of his complaints.  *Id.*  Although plaintiff correctly points out that he complained to Kimberly Shurtleff of sleepiness while taking Effexor and that he shied away from taking narcotics "to avoid addiction," R. at 289, 301, such evidence is insufficient to overwhelm the ALJ's finding.  *See Musgrave*, 966 F.2d at 1374. Moreover, on March 7, 2011, plaintiff reported that his current medications were effective.  R. at 822.  Finally, the ALJ discussed plaintiff's daily activities and noted that plaintiff went to church every day and took a trip to Texas in 2001.  R. at 26.  However, plaintiff's suggestion that this was the ALJ's only reason for discounting plaintiff's testimony is incorrect.  *See* Docket No. 17 at 21.  The ALJ noted inconsistencies in

13

plaintiff's reported ability to engage in daily activities detracted from his credibility.  R. at

26.  For example, on June 16, 2010, Plaintiff completed a function report where he

stated that his daily activities consisted of eating breakfast, taking medications,

attending appointments, and resting.  R. at 218.   Plaintiff indicated that he could not

drive or handle money.  R. at 221.  Plaintiff checked boxes indicating his illness affected

his memory and concentration and his ability to walk, sit, bend, kneel, climb stairs, and

complete tasks.  R. at 223.  Plaintiff reported that he could follow written and spoken

instructions well and that he got along with authority figures.  R. at 223-24.  However, in

early 2011, Plaintiff reported to his treating provider that he was able to do his own

cooking, cleaning, manage medications and money, use public transportation, and drive

himself.  R. at 811, 853.  The ALJ correctly noted that while evidence of a claimant's

daily activities "may be considered, along with medical testimony, in determining

whether a person is entitled to disability benefits," such daily activities do not "in

themselves establish that a person is able to engage in substantial gainful activity."

*Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987).  Although the ALJ did not

engage in a factor-by-factor analysis of evidence relating to plaintiff's credibility, such

formality is not required.  *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001)

(holding that formalistic factor-by-factor recitation of the evidence is not required in

evaluating the claimant's credibility).  The Court cannot conclude that the ALJ failed to

apply the correct legal standard.

Plaintiff argues that the evidence that the ALJ referred to as detracting from

plaintiff's allegations actually supports plaintiff's allegations.  Docket No. 17 at 19-20.

Plaintiff's argument asks the Court to re-weigh the evidence, which the Court will not

14

do.  *See Flaherty*, 515 F.3d at 1070.  Moreover, for the foregoing reasons, the Court

finds that the ALJ's credibility inference was permissible and supported by substantial

evidence and cannot be displaced by the Court's own interpretation of the record.  *See*

*Raymond v. Astrue*, 621 F.3d 1269, 1272-73 (10th Cir. 2009).

### 3.  Residual Functional Capacity

Plaintiff argues that the ALJ erred in refusing to consider the combined effects of

plaintiff's physical and mental impairments and that his RFC assessment was not

based upon substantial evidence.  Docket No. 17 at 17.  RFC is "the maximum degree

to which the individual retains the capacity for sustained performance of the physical-

mental requirements of jobs."  20 C.F.R. Pt. 404, subpt. P, App. 2, § 200.00(c).  The

ALJ is required to assess a claimant's RFC based upon all the relevant evidence in the

record.  20 C.F.R. § 404.1545(a)(1).  The ALJ must consider all medically determinable

impairments, even those that are not severe, as well as the claimant's overall ability to

"meet the physical, mental, sensory, and other requirements of work."

§ 404.1545(a)(1)-(4).

The ALJ specifically considered all of plaintiff's "medically determinable

impairments."  R. at 23.  However, plaintiff does not specifically indicate how the ALJ

erred in failing to consider the combined effects of plaintiff's physical and mental

impairments.  Instead, plaintiff argues that the ALJ erred in failing to include specific

physical limitations and specific mental limitations in his RFC assessment, namely, (1)

that the ALJ erred in failing to assign any reaching, fingering, or handling restrictions or

consider plaintiff's elbow olecranon chip fracture and (2) that the ALJ erred in not

including limitations from Dr. Sexton's opinion.  Docket No. 17 at 18.  Thus, the Court

15

interprets plaintiff's argument not as a challenge to the ALJ's combined RFC finding, but as separate challenges to the ALJ's findings concerning physical and mental limitations.

Plaintiff argues that the ALJ failed to assign any reaching, fingering, or handling restrictions despite objective findings of cubital tunnel syndrome and that the ALJ failed to consider his right elbow injury.  Docket No. 17 at 18.  Plaintiff cites to a June 7, 2010 report completed by Rebecca Hawkins where plaintiff was assessed with symptoms "consistent with Cubital tunnel syndrome [and] triceps tendonitis."  R. at 386.  However, the report also states that, although "Current Functional Performance is moderately limited," plaintiff had "Good" rehabilitation potential.  *Id.*  Moreover, beyond this single diagnosis, plaintiff fails to cite to a more recent diagnosis or more recent symptoms consistent with manipulative restrictions, and the Court has found no such evidence in a review of the record.  Dr. Alan Ketelhohn's opinion did not indicate that plaintiff had manipulative limitations and plaintiff's daily activities do not support his claim of manipulative restrictions.  *See* R. at 26, 76.  Right arm x-rays and other exams were generally normal.  R. at 244, 376.  The Court cannot conclude that a single diagnosis, in June 2010, is evidence that overwhelms the ALJ's RFC findings.

With respect to plaintiff's elbow injury, the ALJ noted that a nerve conduction study revealed no abnormalities of the right upper extremity, but the ALJ found no evidence of a nerve injury.  R. at 24.  The ALJ also noted that plaintiff received an injection in his elbow, which plaintiff reported was effective.  R. at 25.  The Court cannot conclude that the ALJ overlooked plaintiff's elbow condition or that the ALJ's omission of manipulative limitations from plaintiff's RFC was not based upon substantial

16

evidence.

Plaintiff argues that the ALJ erred in failing to include any of the limitations proposed by Dr. Sexton in plaintiff's RFC.  Docket No. 17 at 18.  However, as discussed above, the ALJ gave Dr. Sexton's opinion only moderate weight.  He was not required to adopt her opinion in its entirety in forming plaintiff's RFC.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding that ALJ is charged with determining claimant's RFC and the RFC is not required to directly correspond with "a specific medical opinion on the functional capacity in question").[5]

### 4.  VA Disability Rating

Plaintiff argues that the ALJ failed to adequately consider the VA disability rating and that the ALJ's assessment of the VA disability rating was not based on material evidence.  Docket No. 17 at 23.  Plaintiff cites *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir.1993), for the proposition that a VA disability rating may provide evidence that plaintiff was disabled under the Act.  Docket No. 17 at 24-25. On that point, plaintiff is correct: "[e]vidence is anything you or anyone else submits to us or that we obtain that relates to your claim," which "includes . . . [d]ecisions by any governmental or nongovernmental agency about whether you are disabled . . . ."  20 C.F.R. § 416.912(b)(5).  Therefore, plaintiff properly argues that the ALJ was required to consider the VA's determination.  *See Baca*, 5 F.3d at 480.  However, the ALJ also appropriately noted that a determination of disability by the VA and a determination of disability under the Act are not one and the same.  *See Jones v. Barnhart*, 53 F. App'x

---

[5]To the extent plaintiff argues that the ALJ's RFC finding was inconsistent with the jobs suggested by the VE, plaintiff's argument will be considered below.

45, 47 (10th Cir. 2002) ("Just as the former determinations did not preclude Mr. Jones

from attempting to obtain disability benefits from the Commissioner, neither did they

compel the Commissioner to automatically grant those benefits.  Simply put, the

workers' compensation and veterans administration proceedings are entirely different

and separate from a claim under the Social Security Act, with different parties, different

evidentiary standards, and different bodies of law governing their outcomes."); *Pruett v.

Apfel*, 153 F.3d 728 (table), 1998 WL 380506, at *1 (10th Cir. July 08, 1998) ("In [the

ALJ's] decision, he analyzed the treatment records of VA physicians and stated that the

conclusion of nondisability was made after a consideration of the entire record.");

*Justice v. Chater*, 86 F.3d 1166 (table), 1996 WL 270965, at *2 (10th Cir. May 22,

1996) ("Although the Secretary is required to consider another agency's disability

determination, the other agency's determination has been made based on different

rules, and is not binding on the Secretary.  Here, the ALJ fully considered the Veterans

Administration's rating in making his decision.") (citations omitted); 20 C.F.R. § 416.904

(providing that a "decision by any nongovernmental agency or any other governmental

agency about whether [a claimant is] disabled . . . is based on its rules and is not [the

Commissioner's] decision about whether [a claimant is] disabled . . . .  [The

Commissioner] must make a disability . . .determination based on social security law.

Therefore, a determination made by another agency that [a claimant is] disabled . . . is

not binding on [the Commissioner].").

Plaintiff suggests that, "[w]hen coupled with the litany of physical impairments

and their resultant work related limitations, Mr. Villanueva's combined [VA disability]

rating of 90 percent may provide evidence that he was disabled within the meaning of

the [Act]," Docket No. 17 at 24-25, but he "'has not pointed to any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision.'" *Breneiser v. Astrue*, 231 F. App'x 840, 845 (10th Cir. 2007) (alterations in original) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). "The ALJ was not required to adopt the VA's conclusion," and, because the ALJ's consideration of the VA's decision was otherwise sufficient, the Court "reject[s] this claim of error." *Id.* The ALJ described the VA's conclusions in his opinion, noted that they "ha[d] some relevance to the claimant's ability to perform work," and gave them moderate weight. R. at 27; *see Kralicek v. Apfel*, 229 F.3d 1164 (table), 2000 WL 1153288, at *3 (10th Cir. Aug. 15, 2000) ("The ALJ referenced the VA's disability determination at the hearing; documentation of the determination was in the record; and, in his decision, the ALJ stated that the conclusion of nondisability was made after a consideration of the entire record. The fact that the ALJ drew a different conclusion concerning Mr. Kralicek's condition does not constitute legal error. Although it would have been preferable for the ALJ to be more explicit in his discussion of the VA disability rating, the lack of detail is not reversible error under the circumstances presented by this case." (citations omitted)). As such, the Court rejects plaintiff's argument that the ALJ failed to adequately consider the VA's disability determination.

### 5. Reasoning Level

Plaintiff argues that the ALJ failed to apply the correct legal standard at step five. Docket No. 17 at 22. Specifically, plaintiff argues that the ALJ improperly determined that plaintiff could perform work as a surveillance system monitor, which, although it

says an SVP of two or less, requires reasoning and language General Education Development ("GED") levels of three.  *Id.* at 23.  Plaintiff cites to *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), for the proposition that a GED reasoning level of three is inconsistent with simple, routine work tasks.  Docket No. 17 at 23.

GED levels "embrace[ ] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college." *Dictionary of Occupational Titles* ("*DOT* "), Appx. C. § III (4th ed. rev.1991); *see also Malusa v. Astrue*, 2009 WL 2707219, at *4–5 (D.Ariz. Aug. 25, 2009).  Level three reasoning is defined by the DOT as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *DOT*, Appx. C § III.  Level two reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *Id.*  In *Hackett*, the ALJ determined that plaintiff retained "the attention, concentration, persistence and pace levels required for simple and routine work tasks."  395 F.3d at 1176.  The *Hackett* court stated that the plaintiff's RFC "seems inconsistent with the demands of level-three reasoning" and concluded that level two reasoning "appear[ed] more consistent with Plaintiff's RFC" limitation to "simple and routine work."  *Id.*  The court remanded the case to "allow the ALJ to

address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.*

The Court turns to plaintiff's argument concerning *Hackett*. Whereas the plaintiff's RFC in *Hackett* limited her to "simple and routine work tasks," plaintiff's RFC here contains no such limitation. *Cf. Hackett*, 395 F.3d at 1176. The ALJ's RFC finding stated that plaintiff "cannot perform complex tasks, such that he is limited to work with an svp of 2 or less," but did not explicitly limit plaintiff to simple tasks. R. at 22. Plaintiff provides the Court with no basis upon which to conclude that the ALJ's finding that plaintiff could not complete complex tasks is the equivalent of a finding that he is limited to performing only simple tasks. *Cf. Jones v. Comm'r of Soc. Sec.*, 2013 WL 5965684, at *6 (N.D. Ohio Nov. 8, 2013) (affirming ALJ's finding that claimant could "perform or complete simple to moderate tasks"). Had the ALJ intended to limit plaintiff to simple tasks, he presumably would have said so in his RFC finding. *Hackett* is therefore distinguishable.

This interpretation of plaintiff's RFC is consistent with the ALJ's discussion of plaintiff's mental status. The ALJ stated: "The claimant's mental status exam findings suggests some impairment in the ability to perform complex tasks, but his normal recall and fairly intact concentration indicates that he should be able to perform simple tasks associated with unskilled work." R. at 26. The ALJ found, at step three, that plaintiff has only a "moderate limitation in this area of functioning." R. at 22. When addressing a hypothetical question to the VE, the ALJ defined "no complex tasks" as "SVP 2 or

less." R. at 58. In light of the ALJ's specific RFC finding, the ALJ did not foreclose upon plaintiff's ability to perform tasks other than complex ones or otherwise limit plaintiff to "simple tasks" that would be inconsistent with level three reasoning. Thus, the Court does not find plaintiff's RFC to be inconsistent with level three reasoning.

Plaintiff argues that the ALJ implicitly limited plaintiff to jobs that required only simple tasks by limiting plaintiff to jobs with an SVP of 2 or less. Docket No. 17 at 18, 23. Specific vocational preparation ("SVP") is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *DOT*, Appx. C § II; *see also* 20 C.F.R. § 656.3. "This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job." *DOT*, Appx. C § II. An SVP level of two indicates that a typical worker could learn a particular job within 30 days. *Id.* However, the "DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the [GED], particularly the GED reasoning level, pertains to the complexity of a job." *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006); *accord Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004); *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D. Maine April 30, 2004) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the

GED ratings").  Thus, by limiting plaintiff to jobs with an SVP of two, the ALJ did not explicitly or implicitly limit  plaintiff to performing only "simple tasks."  The Court finds no error in the ALJ's findings on this issue.

Plaintiff also argues that plaintiff has never attained level three GED reasoning levels.  Docket No. 17 at 26.  In response, defendant argues that plaintiff earned a Bachelor of Arts degree and vocational training in the military.  Docket No. 22 at 32. Defendant cites *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished), in support of her argument that plaintiff failed to provide any evidence that he did not retain the level three reasoning necessary to perform the job of surveillance systems monitor.  *See id.* ("There is no genuine dispute that Mounts retained the GED to perform the jobs . . . as testified to by the VE".).  Plaintiff did not file a reply brief and, as such, fails to dispute defendant's argument on this point.  Upon review, the Court agrees with defendant.  Plaintiff has a college education and substantial military career.  Although he currently suffers from mental limitations, there is insufficient evidence upon which to conclude that the ALJ erred in finding that plaintiff had retained sufficient function to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  *DOT*, Appx. C § III.

The ALJ's finding that plaintiff had reasoning levels sufficient to perform the job of surveillance system monitor is supported by substantial evidence.  Plaintiff stated in his function report that he could follow written and spoken instructions well.  R. at 223. The ALJ gave great weight to the opinion of Dr. Marten.  R. at 26.  During Dr. Marten's

examination, plaintiff was able to recall three out of three words after three and five minutes and, although he could not count backwards from 100, he was able to count down from 20 by three with mildly slow pace and labored process. *Id.* He could not spell the word "world" backwards, but was able to spell "cat" and displayed an average grasp of factual information. *Id.* Plaintiff also reported nightmares, hallucinations, and some problems recalling conversations and tasks. R. at 341-42. Dr. Marten concluded that plaintiff had intact immediate and delayed auditory memory recall, but moderate impairment in his ability to concentrate on more complex tasks. R. at 343. Dr. Marten concluded that this may result in moderate difficulty in complying with more complex instructions or directions in a workplace setting, suggesting that plaintiff could experience moderate difficulty in "his ability to actively attend to more complex instructions and/or directions presented to him auditorially, in workplace settings. Mr. Cabrera otherwise evidenced adequate levels of pace and sustained persistence throughout this examination, based on observation." *Id.*

Plaintiff argues that the ALJ gave moderate weight to Dr. Sexton's opinion and did not explicitly disagree with her opinion that plaintiff was moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods. Docket No. 17 at 23 (citing R. at 76). Although the ALJ did not explicitly reject that portion of Dr. Sexton's opinion, the ALJ, as explained above, sufficiently justified his decision to give Dr. Sexton's opinion moderate weight and the ALJ's decision was supported by substantial evidence. The adoption of Dr. Marten's opinion functioned as an implicit rejection of portions of Dr. Sexton's more extreme limitations. The ALJ is not required to explicitly reject each portion of a medical

24

source's opinion with which he disagrees.  The Court finds that plaintiff's mental RFC limitations were supported by substantial evidence.

### 6.  Step Three

Plaintiff argues that the ALJ erred at step three by failing to find that his impairments met the requirements of Listing 1.04 and failing to sufficiently explain his reasoning.  Docket No. 17 at 13-14.  Defendant responds that plaintiff failed to meet his burden of providing medical findings equal in severity and duration to the criteria in the listing and that the ALJ sufficiently explained his decision.  Docket No. 22 at 16, 19.

"At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation and citation omitted).  Listing 1.04 consists of:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord.  With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by

25

> findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, app. 1.

Plaintiff appears to limit his arguments to the issues of "root nerve impingement and arachnoiditis," which correspond with the ALJ's consideration of 1.04A and 1.04B. Docket No. 17 at 15.[6]  Nonetheless, the ALJ did not err in finding that plaintiff did not meet the requirements of Listing 1.04.  The ALJ concluded: "The claimant's condition does not meet the requirements of Listing 1.04 because there is no evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflex loss; or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication."  R. at 21.  The ALJ specifically mentioned Listing 1.04 and expressed his findings in terminology mirroring listing 1.04.  *Cf. Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing").  Plaintiff cites to various MRI results that he claims demonstrate that his impairments meet Listing 1.04.  Docket No. 17 at 14-15.  However, "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing."  *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011).  The listings define those impairments that would "prevent an adult, regardless of his age, education, or work experience, from performing

---

[6]Although plaintiff cites to an MRI that demonstrated moderate to severe lateral stenosis, plaintiff does not appear to challenge the ALJ's finding that he did not suffer from lumbar spinal stenosis with the severity required to meet Listing 1.04.  Docket No. 17 at 14-15.

*any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff's citations to isolated phrases contained within MRI results is insufficient to show that plaintiff met all the criteria for a finding of disability under Listing 1.04 and does not overwhelm the ALJ's consideration of the MRI results, in their entirety, as well as other medical evidence. *See Musgrave*, 966 F.2d at 1374. The Court cannot conclude that the ALJ committed reversible error at step three.

Moreover, even if the ALJ's decision at step three were insufficiently explained, the ALJ's findings at steps four and five "clearly reject any notion that Claimant suffers from" the requirements of Listing 104 and, therefore, do not compel a remand. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). The ALJ noted that plaintiff's MRI from September 2008 revealed a herniated nucleus pulposus at L5-S1 with effacement of the left S1 nerve root and potential effacement of the right L5 nerve root and left L4 nerve root. R. at 24 (citing R. at 499). In October 2008, an MRI revealed minimal bulging at L4-5, but no significant canal stenosis and a left paracentral disk extrusion at L5-SI with marked narrowing of the left lateral recess. *Id.* (citing R. at 604). A June 2009 MRI revealed early degenerative changes of the discs from L2-3 through L5S1, with displacement most severe at L5-S1. *Id.* (citing R. at 597). Plaintiff underwent a diskectomy and laminectomy of L5-SI on June 25, 2009. R. at 24. An August 2009 MRI revealed postoperative changes at L5-S1 with the possibility of residual or recurrent disc material. R. at 563. A November 2009 MRI revealed post-surgical changes at L5-S1, but the granulation tissue surrounding the descending S1 nerve root and to a lesser degree the left L5 nerve root is stable. R. at 491. An EMG

test suggested chronic radicular disease at the right L4 level, but the examining physician stated "I reviewed an MRI scan from 11/16/2009, that looked quite good." R. at 274. A March 2010 MRI revealed a left S1 traversing nerve root at the L5-S1 level, posterior clumping of the nerve roots with a redundancy below L4-5, and post–surgical granulation tissue at L5-S1. R. at 271.

Based on this evidence, the ALJ found that the medical evidence demonstrated some "abnormalities of the lumbar spine, most prominent at L4-5 and L5-S1." R. at 24. The ALJ noted that, since his surgery, the L5-S1 disc appears stable although "soft tissue granulation causes foraminal narrowing and another disc bulge at L4-5 causes some neuroforaminal narrowing at that level as well." *Id.* The ALJ also noted that recurrent herniations or frank impingement of the nerve roots had not been visualized and that there was no "active denervation," which suggested that "nerve damage has not been ongoing." *Id.* The ALJ reviewed exam findings which indicated that plaintiff suffered decreased sensation in the right lower extremity, tenderness to palpation of the lumbar spine, limited range of motion of the lumbar spine, and positive straight leg raise on the right. R. at 24-25. The ALJ stated that, while the exam findings could reasonably cause some limitations in the ability to walk, stand, or lift heavy objects, most exams have also revealed normal motor strength in the lower extremities, normal reflexes, and no spasms. R. at 25. The ALJ noted that exams differ on plaintiff's gait and ability to ambulate. *Id.* The ALJ found that the exam findings suggest that plaintiff "retains significant strength in the lower extremities, and thus should be able to perform some moderate amount of lifting and carrying" and that plaintiff's leg symptoms are not as constant as he alleges, suggesting an ability to stand and walk for at least two out of

eight hours.  *Id.*  The ALJ's confirmed findings at steps four and five "conclusively preclude Claimant's qualification under the listings at step three."  *See Fischer-Ross*, 431 F.3d at 735.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Felix J. Villanueva Cabrera was not disabled is AFFIRMED.

DATED March 26, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

29